Honorable Tana Lin

1

2

3

4

5

6

7   **UNITED STATES DISTRICT COURT FOR THE**
    **WESTERN DISTRICT OF WASHINGTON**
    **AT SEATTLE**

8
    **UNITED STATES OF AMERICA,**
9
                    **Plaintiff,**                  **NO.  CR 22-018 TL**
10
          **v.**                                    **STUART HOFFMAN'S**
11                                                  **SENTENCING MEMORANDUM**
    **STUART MACGREGOR HOFFMAN,**                   **AND MOTION TO DEPART FROM**
12                                                  **SENTENCING GUIDELINES**
                    **Defendant.**
13

14

15

16  **I.    INTRODUCTION AND SUMMARY RECOMMENDATION**

17                        DEFENSE RECOMMENDATION

    240 MONTHS OF CONFINEMENT
18
    25 YEARS OF SUPERVISED RELEASE
19
    RESTITUTION, IF ANY, TO BE DETERMINED
20
    $100 Penalty Assessment
21
         On July 16, 2021, Stuart MacGregor Hoffman pled guilty to an Information charging one
22
    count of Possession of Child Pornography in violation of Title 18 United States Code, §§
23
    2252(a)(4)(B), (b)(2). He is before the Court for sentencing on this count after entering into a
24
    Plea Agreement with the Government.
25

**DEFENDANT'S SENTENCING**              **THE MERYHEW LAW GROUP, PLLC**
**MEMORANDUM - 1**                       200 Broadway, Suite 301
**Cause No. CR 22-018 TL**               Seattle, Washington 98122
                                         TEL: 206-264-1590 / FAX: 206-264-1593

**Sentencing Factors.** The Defense contends that the following Sentencing Guidelines provisions apply to this case:

A. **Count One     Production of Child Pornography in violation of Title 18 United States Code §§ 2251 (a) and (e).**

i. A base offense level of 32, pursuant to USSG § 2G2. 1(a).

ii. A four-level increase as the offense involved a minor who had not yet attained the age of 12 years pursuant to USSG § 2G2.1(b)(1).

iii. A two-level increase for the commission of a sexual act or sexual contact pursuant to USSG §2G2.1(b)(2)(A).

iv. A two-level increase for knowingly engaging in distribution pursuant to USSG §2G2.1(b)(3).

v. A four-level increase because the offense involves material that portrays the sadistic or masochistic conduct, or other depictions of violence, or involves an infant or toddler pursuant to USSG § 2G2.1(b)(4).

vi. A two-level increase for the defendant being a parent, relative, or legal guardian of the minor involved, or other minor otherwise being in the custody, care, or supervisor control of the defendant pursuant to USSG §2G2.1(b)(5).

**Adjusted Offense Level (Subtotal)**                          **46 points**

B. **Count Two     Possession of Child Pornography in violation of Title 18 United States Code, §§ 2252(a)(4)(B), (b)(2):**

i. The Defense agrees with the calculating in the U.S. Probation Presentence Report which reads in relevant part:

**Base Offense Level:** The guideline for a violation of 18 U.S.C. §2252(a)(4)(b) is USSG §2G2.2. The cross-reference at §2G2.2(c)(1) is applicable in this offense as it states the following, "If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, apply USSG §2G2.1 if the resulting offense level is greater than that determined by USSG §2G2.2. The resulting offense level for this Count using USSG §2G2.2 would be 33. If utilizing USSG §2G2.1 the offense level would be 46. Therefore, I am utilizing USSG §2G2.1 for this count which is the same as Count 1.

**Total U.S.S.G. Level:**                          **46 points**

DEFENDANT'S SENTENCING
MEMORANDUM - 2
Cause No. CR 22-018 TL

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

| | |
|---|---|
| **Multiple Count Adjustment:** | **2 points** |
| **Combined Adjusted Offense Level:** | **48 points** |

**Acceptance of Responsibility.**
Mr. Hoffman has clearly taken responsibility for his actions. A three-level reduction to defendant's offense level, pursuant to USSG § 3E1.1(a) and (b).

**Sexual Deviancy Evaluation and Polygraph.**
A three-level reduction pursuant to the defendant providing a sexual deviancy evaluation for purposes negotiation and in return for the defendant's agreement to provide the evaluation to the Court and to U.S. Probation, the government has recommended an additional three level variance.

| | |
|---|---|
| **Adjusted Total Offense Level:** | **42 points** |

Mr. Hoffman has a criminal history score of 0. With a score of 42 points, he has a Guidelines range of 360 months to life. The defense respectfully requests a sentence of 240 months in prison, followed by 25 years of supervised release, which will be more than ample to deter future criminal conduct, protect the community, and punish Mr. Hoffman.

## II.    BASIS FOR RECOMMENDATION

A sentencing court should not presume the advisory Guidelines calculation is reasonable. Gall v. United States, 552 U.S. 38 (2007); Rita v. United States, 551 U.S. 338 (2007); Nelson v. United States, 555 U.S. 350 (2009). The court should perform the appropriate calculations to determine the Guideline range as a starting point, United States v. Cantrell, 433 F.3d 1269, 1280 (9th Cir. 2006), and then proceed to consider, and give equal weight to all of the factors set forth in 18 U.S.C. § 3553(a).

### A. The History and Characteristics of the Defendant.

DEFENDANT'S SENTENCING
MEMORANDUM - 3
Cause No. CR 22-018 TL

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

The paramount consideration of the Sentencing Reform Act is the so-called "parsimony clause," which requires that a sentence be "sufficient, but not greater than necessary" to achieve the objectives of sentencing. See United States v. Chavez, 611 F.3d 1006, 1009 (9th Cir. 2010) (quoting 18 U.S.C. § 3553(a)). In determining what sentence meets this requirement the Court must consider several factors, the first and most important of which is the history and characteristics of the defendant. Id. at § 3553(a)(1).

Based on the direction that courts should consider the personal history and characteristics of the defendant as a necessary sentencing factor, Congress plainly had in mind the "elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice." United States v. Adelson, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006). Mr. Hoffman acknowledges and accepts the bad that he has done and would ask the Court to also consider who he is and the challenges he has faced in his life. His personal characteristics.

Stuart MacGregor Hoffman is a 30-year-old man before this Court for sentencing on his first criminal charge or conviction. The facts of this case are chilling, and Mr. Hoffman's crimes have done great harm and deserve great punishment. But that punishment should be tempered by an understanding of Mr. Hoffman's individual characteristics and history. Mr. Hoffman participated in a very thorough evaluation resulting in a Psychological Evaluation Report by Dr. Richard Packard Ph.D., CSOTP, dated April 14, 2021, which has been provided to the Government and U.S. Probation and the Court. In addition, he participated in a sexual history polygraph examination report dated April 12, 2021, by Rick Minnich which was also shared. What these documents establish is some basis to understand how Mr. Hoffman could stray so far from acceptable norms and commit such deplorable crimes. What they establish is that his

**DEFENDANT'S SENTENCING MEMORANDUM - 4**
**Cause No. CR 22-018 TL**

**THE MERYHEW LAW GROUP, PLLC**
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

offenses were committed by a person who looked functional to the outside world, but who in fact was himself more of a child than a man. And a very low functioning man at that.

What emerged from the testing results of Dr. Packard is a person who is operating at a very low level and using adaptive skills to appear to be operating at a higher level. "Overall, Mr. Hoffman's performance on this neurocognitive screening is in the Very Low range for a male of his age and education, surpassing approximately 1% of his age peers. His Composite Memory score is in the Low range, surpassing approximately 5% of his age peers." For example, on the measure of Executive Function Dr. Packard found, "Mr. Hoffman's performance was in the "Very Low" range, surpassing approximately 1% of his age peers." He received similar 1% (first percentile) scores in Psychomotor Speed, Reaction Time, Complex Attention, Cognitive Flexibility, and Motor Speed.

Dr. Packard had substantial documentation of these issues with Stuart dating back to his elementary school years. Dr. Packard wrote, "At age 8.5, Mr. Hoffman was seen by Brien Vlcek, MD, a child neurologist. (Exhibit C) The referral was generated by his pediatrician out of concerns of problems at school, learning difficulties, and whether there was a neurological basis to Mr. Hoffman's problems. Dr. Vlcek reviewed his history, including psychoeducational testing indicating a Verbal IQ of 74 and a Performance IQ of 72. Dr. Vlcek reports that his other academic skills were delayed, especially math, and that he met the criteria for specific learning disability. Included in the report are notations that two half- siblings have problems with learning differences and attention deficit disorder." In his exam, Dr. Vlcek noted that Mr. Hoffman demonstrated "significant difficulties in new and novel sequencing" but demonstrated a "reasonable vocabulary."

DEFENDANT'S SENTENCING
MEMORANDUM - 5
Cause No. CR 22-018 TL

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

Dr. Vlcek summarized his conclusions:

"Stuart's history, course, and neurological examination are consistent with an encephalopathy, nonprogressive, static, and congenital. This is manifested by a combination of dysmorphic features with partial fusion of the sagittal suture, strabismus, clinodactyly, and a simian crease of the right hand. This is part of a syndrome that also includes central nervous systems cytoarchitectural "wiring" abnormalities bringing about some deficits in higher cortical brain functioning, primarily with deficits in sequencing abilities, retrieval, and recall, as well as some aspects of difficulties with symbolic and abstract problem solving. With this syndrome, he should be considered health-impaired on a neurological basis as the above certainly impacts him educationally...."

Mr. Hoffman's neurological health and affect are, according to Dr. Packard, it is notable that Mr. Hoffman's scores are quite discrepant with remarkable variability. In most of the fundamental areas of general neurological health, Mr. Hoffman's scores are very low. His ability to process and respond to many kinds of stimuli are quite low, including reaction time, motor speed, maintaining attention in complex situations, and forming sound conclusions when following rules, managing tasks, and manipulating information. Yet, Mr. Hoffman's ability to remember and respond to verbal information and, to a lesser extent, visual information, is much better, relative to himself (they are still in the Low and Low Average range relative to his age peers). Also, Mr. Hoffman has an average ability to understand social cues and read facial expressions.

Dr. Packard specifically found that Mr. Hoffman's low functioning was masked behind a thin veneer. "The combination of these characteristics is likely to give casual observers who

DEFENDANT'S SENTENCING
MEMORANDUM - 6
Cause No. CR 22-018 TL

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

1    interact with Mr. Hoffman a false impression of his capabilities. He appears to understand much

2    verbal material, can repeat back oral information and instructions, and is able to understand and

3    respond to the emotional and social contingencies in an interpersonal situation. However, this is

4    a thin veneer. When challenged to make abstract conclusions, respond accurately in complex

5    environments, maintain his attention when challenged, and form correct conclusions to less than

6    obvious information, Mr. Hoffman is likely to be severely impaired."

7
8        Dr. Packard offered the following mental health diagnosis/rule out diagnosis in this case.

9    "Considering the above information, in my professional psychological opinion, the best

10   diagnostic formulation (ICD/DSM codes) regarding Mr. Hoffman is:

11   Dysthymia (F34.1)

12   Generalized anxiety disorder (F41.1)

13   Mild neurocognitive disorder due to another medical condition (G31.84)

14   Pedophilic disorder, nonexclusive type, sexually attracted to males and females (F65.4)

15   Fetishistic disorder (F65.0)

16   Other specified personality disorder, with Avoidant, Schizotypal, and Schizoid traits

17
18       Dr. Packard finds many indications that Mr. Hoffman suffers from a chromosomal

19   disorder and has recommended testing. He writes, "As soon as possible, Mr. Hoffman should

20   have a karyotype chromosome test to determine if he has Klinefelter's Syndrome or one of the

21   related conditions. If he has the condition, there are several implications for Mr. Hoffman's

22   current and future medical status. It may also have implications for improving his

23   neuropsychological and sexual functioning through appropriate medical treatment."

24
25

DEFENDANT'S SENTENCING
MEMORANDUM - 7
Cause No. CR 22-018 TL

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

**B. Section 3553 Factors, and the "need for the sentence imposed," support a 60-month sentence.**

Section 3553(a)(2) requires the Court to consider the "need for the sentence imposed," meaning, "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2).

First, the seriousness of the offense, the respect for the law, and the need for a just punishment will all be satisfied by a sentence of more than a year in custody. There is no question that this offense is serious and that the consequences to the innocent victims are severe and lifelong. Mr. Hoffman has learned what he refused to see before, and it has horrified him. This entire experience has taught him the importance of respecting the law and following the law. Given these circumstances, 240 months is a powerful and painful sentence to impose on Mr. Hoffman and will more than serve the interests of insuring his respect for the law.

Second, the interests of general deterrence will be served by a 240-month sentence. In addition to the significant portion of his life which will be spent behind prison walls, it is the fact of indictment, plea, and the public humiliation of being prosecuted—rather than the length of his sentence—that provides the greatest deterrent effect here. See United States v. Smith, 683 F.2d 1236 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."). In this case Mr. Hoffman's crimes have been covered in the press after being arrested while working at a high school.

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

Third, the need to protect the public from further crimes by Mr. Hoffman. Dr. Packard conducted a thorough assessment or future risk of sexual reoffending employing a variety of empirically validated tools and concluded, "In my professional opinion, Mr. Hoffman's likelihood of being arrested or convicted for a future sexual offense is in the Low to Average range. "Dr. Packard employed the Static 99R and the Vermont Assessment of Sex Offender Risk-2 (VASOR-2). Mr. Hoffman's score on the Static-99R resulted in a raw score (3) that exceeded approximately 66% of the other sex offenders in the "routine" correctional samples. In other words, his score on this instrument was in the Average range for all sex offenders. Compared to the largest development sample (the so-called "Routine" sample), of the other sex offenders who scored like Mr. Hoffman, approximately 7.9% of them were arrested or convicted for a new sex offense within a 5-year period following release.

Mr. Hoffman's characteristics resulted in a raw score of 5 on the VASOR-2. Of the offenders with a similar score in the development samples, approximately 2.6% were estimated as committing a new sex offense within a five-year period. This is a score in the "Low" risk category for the VASOR-2.

Dr. Packard also used the Violence Risk Appraisal Guide-Revised (VRAG-R). Mr. Hoffman had a total VRAG-R score of -21, which is a "Low Risk" range score and exceeds approximately 16% of the VRAG-R development sample. The VRAG-R divides the samples into 9 risk "bins" of scores, with Bin 1 being the lowest and Bin 9 the highest. Of the members of the development sample who scored like Mr. Hoffman, 12% of them were returned to a secure facility for a new violent (including sexual) incident within 5 years of release. 24% of them were returned to a secure facility for such behavior within 12 years of release.

**DEFENDANT'S SENTENCING**
**MEMORANDUM - 9**
**Cause No. CR 22-018 TL**

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

Combining these risk assessment tools, Dr. Packard concluded, "To summarize this topic, from an actuarial perspective, Mr. Hoffman appears to be in the Low to Average range of risk for future sexual recidivism. Mr. Hoffman's characteristics were most like other offenders of which between 2.6% and 7.9% were detected to have committed a new sex offense within five years of release to the community."

The link between Mr. Hoffman's dynamic risk factors and his congenital issues is drawn directly by Dr. Packard. "Mr. Hoffman has several dynamic risk factors, particularly related to his paraphilias of pedophilia and fetishism, but also including difficulties with problem solving, and emotional congruence with children. It is distinctly possible, if not probable, that these factors are due to his congenital anomalies first described when he was age 8." He concludes, "There are significant indications that Mr. Hoffman's ability to think and reason with abstract concepts is quite limited and it is likely that he will need at least some degree of support in the community, indefinitely, a role that has largely been handled by his mother."

Mr. Hoffman would no doubt benefit greatly from the right kind of therapeutic intervention, and Dr. Packard determined that Mr. Hoffman wants that treatment. "Mr. Hoffman was also administered the Personality Assessment Inventory (PAI). His responses suggest an acknowledgement of important problems and the perception of a need for help in dealing with these problems. He reports a positive attitude towards the possibility of personal change, the value of therapy, and the importance of personal responsibility." The problem is he will have limited access to this kind of programming while incarcerated.

Dr. Packard goes so far as to recommend Mr. Hoffman for community-based treatment, which we recognize is not realistically an option any time soon for Mr. Hoffman. Dr. Packard

**THE MERYHEW LAW GROUP, PLLC**
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

writes, "I view Mr. Hoffman's characteristics and assessed risk as manageable within a community setting, so long as a supervision plan that considers his difficulties and characteristics is followed. Considering his current age and status, he has been a productive member of the community and he has an historical record of achievement and employment that, given his disability, is strong. With an appropriate supervision plan, I view him as amenable to community outpatient treatment."

Mr. Hoffman presents with several favorable factors that suggest he will be specifically deterred by this sentence. The likelihood that a defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011). The evaluation completed by Dr. Richard Packard made specific findings about Mr. Hoffman's risk of re-offense based on the use of the latest empirically validated risk assessment tools (above).

**C. Mr. Hoffman asks the Court to impose a sentence which is concurrent with the sentence imposed in State Court, and to order that his sentence be served in the Washington Department of Corrections.**

While "family ties are not ordinarily relevant to determine the sentence," under § 3553(a), "the history and characteristics of the defendant, including his family ties, are pertinent to crafting an appropriate sentence." *United States v. Nellum*, 2005 U.S. Dist. LEXIS 568. *10 (N.D. Ind. Feb. 3, 2005); *United States v. Ranum*, 353 F. Supp. 2d 984, 990-91 (E.D. Wis. 2005) (considering defendant's family ties and responsibilities and then imposing a below-Guidelines sentence).

Mr. Hoffman has a very close relationship with his mother who lives in Lake Tapps, Pierce County, Washington. Mr. Hoffman very much wants to be able to stay in contact with his

DEFENDANT'S SENTENCING
MEMORANDUM - 11
Cause No. CR 22-018 TL

THE MERYHEW LAW GROUP, PLLC
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

mother and to see her as often as he can. Placement in a Washington state prison would enable that contact to continue more readily than placement out of state in a Bureau of Prisons facility. Therefore, the parties have agreed to recommend that the sentence imposed by this Court be served concurrently with the 240-month sentence imposed in King County Superior Court for related charges.

In order for a sentence imposed in Federal Court to be served concurrent with a State sentence the Bureau of Prisons recommends specific language be included in the Judgment & Commitment Order. The sentencing court orders, on the Judgment & Commitment Order or the Judgment in a Criminal Case (J&C), that the federal sentence be served concurrently with a state sentence.

Mr. Hoffman has been in the primary custody of State authorities throughout the pendency of both of these cases and was transferred to Federal Court for the entry of his plea by a writ. He is currently in the custody of the Washington Department of Corrections in Shelton, Washington and will need to be brough to Court for sentencing on this matter by a writ. According to BOP Policy 5160_005 (Exhibit A) , "Concurrent service of federal and non-federal sentences in a non-federal institution occurs when the Bureau designates a non-federal institution for service of the federal sentence. Ordinarily, the reason for selecting the non-federal institution is that primary custody resided with the non-federal jurisdiction and the federal sentencing court intended its sentence be served concurrently with the non-federal sentence.

When an inmate is sentenced in both federal and state jurisdictions, care must be taken to ensure that he or she is suitable for federal designation.  Normally, designating a non-federal institution for the inmate is done when it is consistent with the federal sentencing court's intent. Ordinarily, this intent is made known in one of the following ways:

**DEFENDANT'S SENTENCING MEMORANDUM - 12**
**Cause No. CR 22-018 TL**

**THE MERYHEW LAW GROUP, PLLC**
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

**(1)**         **Court Order**.  The sentencing court orders, on the Judgment & Commitment Order or the Judgment in a Criminal Case (J&C), that the federal sentence be served concurrently with a state sentence. The court may make clear its intent by using language similar to:

#         "Said sentence to run concurrently with the state sentence the defendant is presently serving."

#         "Sentence to run concurrently with sentence imposed under Docket 168-88, San Diego County Court, on      May 14, 1988."

#         "Sentence is hereby ordered to run concurrently with any other sentence presently being served."

#         "Sentence to begin immediately."

**(2)**         **Court Recommendation of Non-Federal Confinement.**  The sentencing court recommends a non-federal institution as the place of confinement on the J&C. Most J&Cs have a preprinted area for recommendations with language similar to:

**"the court makes the following recommendations to the Bureau of Prisons..."**

If the inmate was in primary non-federal custody, (i.e., produced on writ), and the court uses the preprinted phrase and adds the name of a state institution, this will be accepted as a court recommendation for concurrent service.  This wording could also appear in the body of the J&C."

It should be noted that Mr. Hoffman was sentenced in King County Superior Court to a 240-month indeterminate sentence under Revised Code of Washington 9.94A.507, which requires the Court to set a minimum sentence only. (Judgment and Sentence attached as Exhibit B) At the end of that minimum sentence Mr. Hoffman will be required to appear before the

**DEFENDANT'S SENTENCING**
**MEMORANDUM - 13**
**Cause No. CR 22-018 TL**

**THE MERYHEW LAW GROUP, PLLC**
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

Washington Indeterminate Sentence Review Board for a hearing to determine whether he qualifies for release. The ISRB will release him at the end of his minimum term only if they find that it is more likely than not that he will not commit a sex offense if released on supervision and conditions. If they do not make that finding he could be held in prison for up to the maximum for his offenses, which is the rest of his life. There is no guarantee he will ever be released. If he is released, he would be on community custody with the Washington Department of Corrections for the rest of his life.

The Defense requests that this Court recommend and order that Mr. Hoffman continue to serve his sentence, concurrently, while in the custody of the Washington Department of Corrections.

**D. Mr. Hoffman seeks the Court's mercy.**

Mr. Hoffman stands before the Court prepared to accept punishment for his crimes. He has been humbled by this prosecution; he is disappointed in himself; he is shamed, cowed, and full of regret for the effect he has had on his victim, his ex-wife, and his family. He will now spend nearly two decades at minimum in custody. He will live the rest of his life atoning for his crimes, treating, and recovering from his deviance and addictions, and changing his life to ensure he avoids mistakes and choices like those that led him here.

Mr. Hoffman sees this sentence as an opportunity to get the skills and habits that will help him make sure he does not reoffend. While he understands the price he owes for what he has done, he respectfully asks the Court to consider not only his crimes and his failings in meting out his sentence, but also his character, his history, and his challenges as he redoubles his efforts to change his life and making amends.

**DEFENDANT'S SENTENCING**
**MEMORANDUM - 14**
**Cause No. CR 22-018 TL**

**THE MERYHEW LAW GROUP, PLLC**
200 Broadway, Suite 301
Seattle, Washington 98122
TEL: 206-264-1590 / FAX: 206-264-1593

1

2    **III.    CONCLUSION**

3         This sentence both acknowledges Mr. Hoffman guilty plea to this crime, while also being

4    a "sufficient, but not greater than necessary" punishment under section 3553(a). The Defense

5    respectfully request that the Court sentence Stuart Hoffman to 240 months of incarceration,

6    concurrent with King County Superior Court case 20-1-04874-3 SEA, to be followed by 25 years

7    of supervised release.

8                                    **DATED** this 10th day of May 2022.

9                                              /s/ Brad A. Meryhew
                                              Brad A. Meryhew, WSBA# 26797
10                                            Attorney for Defendant
                                              The Meryhew Law Group
11                                            200 Broadway, Suite 301
                                              Seattle, WA 98122
12                                            Phone: (206) 264-1590
                                              Fax: (206) 264-1593
13                                            Email: brad@meryhewlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

**DEFENDANT'S SENTENCING**                    **THE MERYHEW LAW GROUP, PLLC**
**MEMORANDUM - 15**                           200 Broadway, Suite 301
**Cause No. CR 22-018 TL**                    Seattle, Washington 98122
                                              TEL: 206-264-1590 / FAX: 206-264-1593

# Exhibit A

# Bureau of Prisons Policy 5160.05
# Designation of State Institution for Service of Federal Sentence



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD |
| **NUMBER:** | 5160.05 |
| **DATE:** | 1/16/2003 |
| **SUBJECT:** | Designation of State Institution for Service of Federal Sentence |

1.   **PURPOSE AND SCOPE.**  To provide instructions for the designation of a state institution for concurrent service of a federal sentence.

2.   **SUMMARY OF CHANGES.**  This policy has been rewritten to comply with the "Plain Language" initiative.

3.   **PROGRAM OBJECTIVES.**  The expected results of this program are:

   a.   State institutions will be designated for concurrentservice of a federal sentence when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system.

   b.   Accurate records and accountability will be maintained bythe Regional Inmate Systems Administrator (RISA) for inmates serving federal sentences in state institutions. 4.   **DIRECTIVES AFFECTED**

   a.   **Directive Rescinded**

   PS 5160.04 Designation of State Institution for Service of
              Federal Sentence (4/19/00)

   b.   **Directives Referenced**

| | |
|---|---|
| PS 5100.07 | Security Designation and Custody Classification Manual (9/3/99) |
| PS 5800.07 | Inmate Systems Management Manual (12/24/91) |
| PS 5880.28 | Sentence Computation Manual-CCCA (2/21/92) |
| PS 5880.30 | Sentence Computation Manual ("Old Law" Pre-CCCA-1984) (7/16/93) |
| PS 5880.32 | District of Columbia Sentence Computation Manual (1/23/01) |
| PS 7300.09 | Community Corrections Manual (7/22/98) |

5.  **STANDARDS REFERENCED**

    a.   American Correctional Association 3rd Edition Standards
    forAdult Correctional Institutions:  3-4093 and 3-4094

    b.   American Correctional Association 3rd Edition Standards
    forAdult Local Detention Facilities:  3-ALDF-1E-02 and 3-ALDF-
    1E-03

    c.   American Correctional Association 2nd Edition Standards
    forAdministration of Correctional Agencies:  2-CO-1E-04 and
2-CO-1E-05

6.  **MCC/MDC/FDC APPLICATION.**  This Program Statement applies to
    pretrial and holdover inmates as indicated in subsequent
    sections.

7.  **STATUTORY AUTHORITY.**  Authority for designating a state
    institution as the place to serve a federal term of
    imprisonment is found in 18 U.S.C. § 3621(b), which states:
    **"The Bureau of Prisons shall designate the place of the
    prisoner's imprisonment.  The Bureau may designate any
    available penal or correctional facility that meets minimum
    standards of health and habitability established by the
    Bureau, whether maintained by the Federal Government or
    otherwise and whether within or without the judicial district
    in which the person was convicted, that the Bureau determines
    to be appropriate and suitable . . . ".**

    a.   For inmates who committed the underlying offense
    beforeNovember 1, 1987, a similar provision is found in
18 U.S.C. § 4082(b) (repealed).

b.   Federal judges have the authority to order a federal term
ofimprisonment to run consecutively to or concurrently with any
other sentence.  When there is a previously imposed sentence
(federal or non-federal) in existence at the time of federal
sentencing, and the federal judge does not state whether multiple

terms of imprisonment are to run consecutively to or concurrently
with one another, the sentences run consecutively (see 18 U.S.C.
§ 3584).  (This applies only to federal offenses committed on or
after November 1, 1987.)
c.   When a federal judge orders or recommends a federal
sentencerun concurrently with a state sentence already imposed, the
Bureau implements such order or recommendation, ordinarily by
designating the state facility as the place to serve the federal
sentence.  United States v. Hardesty, 958 F.2d 910 (9th Cir. 1992).
d.   For federal offenses that occurred prior toNovember 1, 1987,
and there is a previously imposed sentence in existence at the time
of federal sentencing and the federal judge is silent as to whether

multiple terms run concurrently or consecutively, the RISA will have to research the record and make a determination regarding concurrency.

e.   No concurrent designation will be considered when statutorylanguage mandates consecutive service or the U.S. Sentencing Guidelines require consecutive service.

f.   Authority for commencement of a sentence once a facility isdesignated is found in 18 U.S.C. § 3585(a) and § 3568 (repealed).

   18 U.S.C. § 3585(a), states,

   **"A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."**

   18 U.S.C. § 3568, states in part,

   **"The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence."**

g.   Just as the federal government has no authority to prescribewhen a state sentence will commence, the state has no authority to order commencement of a federal sentence (see 18 U.S.C. § 3585(a) & § 3568 (repealed)).

8.   **AUTHORITY FOR DESIGNATIONS.**   The Bureau's authority to designate a state institution for concurrent service of a federal sentence is delegated to Regional Directors.

   #A designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system.

   a.   Exceptions to the general rules regarding concurrentdesignation may be based on the merits of a particular case.   Information reviewed will include:
   #     inmate discipline history,
   #     institutional adjustment,
   #     recommendations of the Wardens at the state and federal institutions,
   #     the recommendation of the prosecuting Assistant U.S. Attorney,

\#    intent of the federal sentencing court, if available, and
\#    any other pertinent information regarding the inmate.
b.    In the event of an "exception," the above information
will besent to the appropriate RISA who will coordinate a
response.

The Regional Director is the final authority to determine
exceptions. 9.  **CONCURRENT SERVICE OF FEDERAL AND STATE
SENTENCES**

a.    Concurrent service of federal and non-federal sentences
in anon-federal institution occurs when the Bureau designates
a non-federal institution for service of the federal sentence.
Ordinarily, the reason for selecting the non-federal
institution is that primary custody resided with the non-
federal jurisdiction and the federal sentencing court intended
its sentence be served concurrently with the non-federal
sentence.

b.    When an inmate is sentenced in both federal and
statejurisdictions, care must be taken to ensure that he or
she is suitable for federal designation.  Normally,
designating a non-federal institution for the inmate is done
when it is consistent with the federal sentencing court's
intent.  Ordinarily, this intent is made known in one of the
following ways:

(1)    **Court Order.**  The sentencing court orders, on the
Judgment & Commitment Order or the Judgment in a Criminal
Case (J&C), that the federal sentence be served concurrently
with a state sentence. The court may make clear its intent
by using language similar to:

\#  "Said sentence to run concurrently with the state
    sentence the defendant is presently serving."

\#  "Sentence to run concurrently with sentence imposed under
    Docket 168-88, San Diego County Court, on       May 14,
    1988."

\#  "Sentence is hereby ordered to run concurrently with any
    other sentence presently being served."

\#  "Sentence to begin immediately."

(2)    **Court Recommendation of Non-Federal Confinement.**
The sentencing court recommends a non-federal institution as
the place of confinement on the J&C.  Most J&Cs have a
preprinted area for recommendations with language similar
to: **"the court makes the following recommendations to the
Bureau of Prisons..."**

If the inmate was in primary non-federal custody, (i.e., produced on writ), and the court uses the preprinted phrase and adds the name of a state institution, this will be accepted as a court recommendation for concurrent service.  This wording could also appear in the body of the J&C.

(3)    **Concurrent Service of Sentence After Imposition.**
The court may, from time to time, order concurrent service of the federal sentence at some time after its imposition. This may occur when primary jurisdiction resided with the state and the court believed mistakenly that the inmate was in federal custody for service of the federal sentence on the date of imposition.

(4)    **Inmate Request.**  Occasionally, an inmate may request a nunc pro tunc (i.e., occurring now as though it had occurred in the past) designation.  As a result of the decision in    Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990), the Bureau considers an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a nunc pro tunc designation.

(a)    In Barden, the court held that the Bureau must consider an inmate's request for concurrent service of the state and federal sentences.

\#    However, there is no obligation under Barden for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence.

(b)    This type of request will be considered regardless ofwhether the inmate is physically located in either a federal or state institution.  Information will be gathered, if available,  to include:

\#    a copy of the federal and state J&Cs,

\#    the state sentence data record to include jail credit, and

\#    any other pertinent information relating to the federal and state sentences.

(c)    In making the determination, if a designation forconcurrent service may be appropriate (e.g., the federal sentence is imposed first and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term), the RISA will send a letter to the sentencing court (either the Chambers of the Judge, U.S. Attorney's Office, and/or

U.S. Probation Office, as appropriate) inquiring whether the court has any objections. Regardless of where the original inquiry is directed, the U.S. Attorney's Office and U.S. Probation Office will receive a courtesy copy.

      (d)   If, after 60 days, a response is not received from thesentencing court, the RISA will address the issue with the Regional Counsel and a decision will be made regarding concurrency.

      (e)   No letter need be written if it is determined that aconcurrent designation is not appropriate. If the court has indicated previously that its language on judgments is sufficient for designation of a state institution for service of the federal sentence, then no further letters need be written.

When the original sentencing judge is no longer available and the assigned judge offers no opinion, the RISA will make a determination based on the particular merits of the case. (Refer to Section 8.a. for more information.)  The RISA will notify the inmate of the decision in writing and place a copy of this notification in the J&C file.

      (f)   The Bureau will not allow a concurrent designation ifthe sentencing court has already made a determination regarding the order of service of sentence (e.g., the federal sentencing court ordered the sentence to run consecutively to any other

sentence, or custody in operation, during any time in which the inmate requests concurrent designation).

    (5)   **State Request.**  Occasionally, a Regional Office receives a request from a state jurisdiction indicating that the state and federal sentences are to be served concurrently, whether by state court order or department of corrections referral.

      (a)   The RISA will gather and review all informationpertaining to the federal and state sentences. After reviewing this information carefully, if necessary, the RISA will correspond with the federal sentencing court to ascertain whether it has any objections to the federal and state sentences running concurrently. A courtesy copy of this correspondence will be forwarded to the appropriate U.S. Attorney.  (The same procedures apply as outlined in subsections 4.c. and d., Inmate Request.)

      (b)   If the court has no objections, the state institutionmay be designated as the place to serve the federal sentence concurrently with the state sentence,

according to the procedures detailed in this Program
Statement.

> **Note:**      The Bureau will not, under ordinary
> circumstances, such as overcrowding in a state
> institution, accept transfer of the inmate into
> federal custody for concurrent service.

10.  **RESPONSIBILITIES.**  The following procedures are to be used when
a state institution is designated for the concurrent service of
federal and state sentences.  (See the **Security Designation and
Custody Classification Manual** for procedures when a federal inmate
transfers from a federal to a non-federal institution for concurrent
service of a federal and state sentence.)

a.  **Notification to Regional Director.**  The Regional Director, of
the region where the state institution is located, will be
notified of the federal court's order that the federal sentence
run concurrently with the state sentence.  This notification
will be received from the Community Corrections Manager (CCM).
The CCM forwards the Regional Office a copy of:

- # the inmate's J&C Order,
- # the federal register number,
- # the U.S. Marshals Tracking Form (USM-129),
- # the Pre-Sentence Investigation Report (PSI), and
- # any other available pertinent information.

b.  **Designation.**  The RISA, through the Regional Director, may make
a nunc pro tunc designation to the non-federal institution
using a letter to the U.S. Marshals Service (USMS)(Attachment
A).

(1)  As part of the designation process, a date is
specifiednunc pro tunc (i.e., occurring now as though it had
occurred in the past) as the effective date the sentence will
begin.

(2)  Specifying a nunc pro tunc designation ensures that
timelost in administrative processing is not passed on to the
inmate. It is this designation that allows the federal
sentence to commence.

(3)  As the recommendation for concurrent service, in
mostcases, is received after the imposition of sentence, the
nunc pro tunc designation will normally be effective from the
original date of sentencing, unless otherwise indicated in the
subsequent order.

    (4)   Since the inmate is primarily in state custody, alldecisions regarding confinement and classification are at the sole discretion of the state authorities.  A copy of the letter will be forwarded to the USMS in the district where the state institution is located as notification to lodge a detainer.

    (5)   The letter, along with sentence computation data sheet,will be mailed to the appropriate state department of corrections; an informational copy will be sent to the USMS in the sentencing district; and a copy to the U.S. Parole Commission (USPC), if appropriate.  A copy of the letter will be placed in the J&C file, maintained by the appropriate RISA. The sentence computation data sheet will also be mailed to the inmate.

    (6)   Should the court order concurrent service of the federalsentence after the inmate is received in federal custody, the RISA will determine whether a nunc pro tunc order is appropriate.

    (7)   By action of a nunc pro tunc order, the Federal sentencemay commence on the date of its imposition or on a subsequent date that will not cause the inmate to be a late release by virtue of the nunc pro tunc order.

    (8)   Should a nunc pro tunc designation be granted, a thoroughreview of jail credit (Willis/Kayfez) must be conducted as outlined in the sentence computation manuals.

    (9)   If the nunc pro tunc designation results in a date that would make the inmate "past due" for release, such designation will be retroactive to a point in time that the sentence, when calculated in the same manner as any other sentence, results in a release date that affords the institution time to conduct normal release processing.

    (10) If the D.C. Superior Court recommends designation of astate institution for service of a D.C. sentence, the RISA in the appropriate region will gather and review all information pertaining to the D.C. sentence.  If it is determined that a nunc pro tunc designation is warranted, a copy of the designation letter along with other relevant information will be forwarded to the D.C. Records Center (DCRC) for computation of the D.C. sentence.  The DCRC will maintain an administrative file, compute the sentence, and will be responsible for all computation updates.

    Should an update be required to the D.C. state concurrency sentence computation, the RISA will provide all appropriate

documentation to the DCRC.  Once the DCRC updates the sentence
computation, they will notify the RISA via GroupWise.

c.  **Files.**  The RISA is to maintain a file on all state concurrency
    cases.  Each file will contain the following:
    #   the J&C Order,
    #   the USM-129,
    #   a copy of the letter to the USMS (Attachment A),
    #   the PSI, and
    #   a signed/certified copy of the Sentence Data
        Computation Sheet.
        (1)  When the inmate satisfies the federal sentence,
    copies ofrelease certificates, as well as the notifications to
    state authorities, the USMS, U.S. Probation Office, and the
    USPC, will be placed in the file.  Concurrency files will be
    retained until the sentence expires and then they will be sent
    to the appropriate Federal Records Center in accordance with
    the Inmate Systems Management Manual.

        (2)  If the inmate is eligible for parole, the RISA will
    sendthe following to the USPC:

    #   the letter to the USMS (Attachment A),
    #   the J&C Order,
    #   the USM-129,
    #   the PSI,
    #   a copy of the Sentence Data Computation Sheet, and
    #   any other available pertinent information.
        (3)  If a copy of the inmate's PSI is not provided in
    thedesignation packet, the RISA will request a copy from the
    U.S. Probation Office.

d.  **Sentence Computation.**  The RISA is responsible for:
    #   computing the inmate's sentence (with the exception of
        D.C. Code sentences),
    #   posting awards of Extra Good Time (EGT),
    #   notifying the USMS and the state department of
        corrections of the inmate's release date, and
    #   completing all necessary SENTRY transactions.
        (1)  The RISA has the final approval for state
    recommendationsfor EGT.  EGT awards for inmates in state
    institutions must be consistent with the requirements for
    those in federal institutions (see the sentence computation
    manual).

        (2)  The maximum amount of Statutory Good Time (SGT) or
    GoodConduct Time (GCT) an inmate is entitled to receive will
    be awarded unless documentation provided by state authorities

recommends a forfeiture of SGT or disallowance of GCT based on the inmate's behavior.

After reviewing the documentation provided by the state, the RISA will determine, in consultation with the Regional Discipline Hearing Administrator or Regional Counsel, whether some or all of the SGT or GCT should be forfeited/disallowed.

e.  **Release**

(1)  Should an inmate be released from the non-federaljurisdiction before the statutory release or parole date of the federal term of imprisonment, the USMS will assume custody.  The USMS may request designation from the respective CCM 30 days prior to assuming custody of the inmate.  The USMS must provide documentation verifying the completion of the state sentence.  The RISA is then to forward all inmate files (Central, Medical, and J&C) to the designated federal institution.

(2)  If the federal term expires prior to the inmate's releasefrom the non-federal jurisdiction, the RISA is to notify the state department of corrections, the USMS, and the USPC (if necessary). The RISA will complete the appropriate release paperwork as it pertains to the confinement portion of the federal sentence.  Upon receiving the release notification, the USMS will withdraw the detainer.

f.  **Monitoring.**  The RISA will establish a system to monitor release dates of concurrent sentences so that timely notification will be made to state authorities, the USMS, and the USPC (if necessary).  This may be accomplished by using:

&#35;  a SENTRY release roster,

&#35;  a log, or

&#35;  any other method that enables the RISA to monitor release dates.

(1)  The USPC will prepare certificates for inmates scheduledfor release on parole.  The RISA will ensure that any parole certificates received on a state concurrency case are accurate and any discrepancies are reported to the USPC. Normally, the RISA prepares the mandatory release and special parole term certificates.

For the completion of any other release paperwork, refer to the Inmate Systems Management Manual.  For information on fines and restitution, refer to the appropriate program statements.

(2)  A term of supervised release that follows a federalsentence will not commence until the inmate is released from all periods of confinement.  When an inmate has a term of

supervised release and the federal sentence expires prior to
the state term, the RISA will ask the state authorities to
notify the U.S. Probation Office 30 days prior to release from
state custody.  The RISA will forward a courtesy copy of the
request to the U.S. Probation Office.

g.   **Primary Jurisdiction**.  When it has been determined an inmate
     was committed improperly to federal custody and primary
     jurisdiction resides with a state sovereign (i.e., the inmate
     was under jurisdiction of the federal sentencing court on the
     basis of a writ of habeas corpus ad prosequendum), institution
     staff, through the RISA, will make every effort to return the
     inmate to state custody.

  A return to the state means that the federal sentence should be
considered as **not** having commenced since transfer to the Bureau was
in error and the prisoner should have been returned to the state
after federal sentencing as a required condition of the federal writ
(see Crawford v. Jackson, 589 F.2d 693 (D.C. Cir. 1978)).  The
federal J&C will be lodged as a detainer, through the USMS, with the
state authorities.  If the federal court recommends concurrent
service of the federal and state sentences, the case should be
referred to the appropriate RISA.


                              /s/
                              Kathleen Hawk Sawyer
                              Director

PS 5160.05
1/16/2003
Attachment A, Page 1

**Sample Letter to U.S. Marshal**

```
Date               :
Inmate's Name      :
Register Number    :
Docket Number      :
Offense            :
Sentence           :
Judicial District  :
Sentence Begins    :
Release Date       :
Designated Facility :
```

| U.S. Marshals Service | Maryland Dept. of Corrections |
|---|---|
| District of Maryland | 6776 Reisterstown Road |
| 605 U.S. Courthouse | Suite 310 |
| 101 West Lombard Street | Baltimore, MD 21215-2341 |
| Baltimore, MD 21201 | |

Attn: Criminal Desk

The United States District Court that sentenced the above individual recommended that the federal sentence run concurrently with the state sentence. To make this possible, I have designated the above facility for service of the federal sentence.

Please lodge and maintain a detainer with the local authorities for the duration of the federal sentence. The date indicated above is the projected release date.

Please request that state authorities notify you 60 days in advance of any release from state custody, or in the event the inmate escapes, dies, or is transferred.

Upon notice of release from state custody, please request federal designation through the Community Corrections Manager in your district.

I understand that no charge will be made to the federal government during the time the inmate is in service of the state sentence.

Sincerely,

Regional Director

**STATE CORRECTIONAL AUTHORITY:**  This is for notification purposes only and does not limit your discretion in any decision affecting this offender's classification, work, and quarters assignments or other treatment and programs.

# Exhibit B

# Judgment and Sentence
# King County Superior Court
# Cause 20-1-04874-3 SEA
# April 15, 2022

# SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,      )
                               )
             Plaintiff,    )   No. 20-1-04874-3 SEA
                               )
     vs.                    )   **JUDGMENT AND SENTENCE**
                               )   **FELONY  (FJS)**
   STUART MACGREGOR HOFFMAN,   )
                               )
             Defendant.   )
                               )

## I. HEARING

I.1 The defendant, the defendant's lawyer, Brad A. Meryhew, and the deputy prosecuting attorney were present at the sentencing hearing conducted today. Others present were: _____

_____

## II. FINDINGS

There being no reason why judgment should not be pronounced, the court **finds**:

2.1 **CURRENT OFFENSE(S):** The defendant was found guilty on 01/24/2022 by Plea of:

Count No.: 1   Crime: Rape of a Child in the First Degree
RCW: 9A.44.073                Crime Code: 01064
Date of Crime: 05/14/2016 through 05/14/2020

Count No.: 2   Crime: Rape of a Child in the First Degree
RCW: 9A.44.073                Crime Code: 01064
Date of Crime: 05/14/2016 through 05/14/2020

Count No.: 3   Crime: Child Molestation In The First Degree
RCW: 9A.44.083                Crime Code: 01070
Date of Crime: 05/14/2016 through 05/14/2020

Count No.: 4   Crime: Child Molestation In The First Degree
RCW: 9A.44.083                Crime Code: 01070
Date of Crime: 05/14/2016 through 05/14/2020

☐   Additional current offenses are attached in **Appendix A**

Rev. 8/20/21 - DE                        1

**SPECIAL VERDICT or FINDING(S):**

(a) ☐ While armed with a **firearm** in count(s) _____ RCW 9.94A.533(3).

(b) ☐ While armed with a **deadly weapon** other than a firearm in count(s) _____ RCW 9.94A.533(4).

(c) ☐ With a **sexual motivation** in count(s) _____ RCW 9.94A.835.

(d) ☐ A V.U.C.S.A offense committed in a **protected zone** in count(s) _____ RCW 69.50.435.

(e) ☐ **Vehicular homicide** ☐ Violent traffic offense ☐ DUI ☐ Reckless ☐ Disregard.

(f) ☐ **Vehicular homicide** by DUI with _____ prior conviction(s) for offense(s) defined in RCW 46.61.5055, RCW 9.94A.533(7).

(g) ☐ **Non-parental kidnapping** or unlawful imprisonment with a minor victim RCW 9A.44.128, .130.

(h) ☐ **Domestic violence – intimate partner** as defined in RCW 26.50.010(7), RCW 9A.36.041(3) and RCW 10.99.020 was pled and proved for count(s) _____

(i) ☐ **Crime before 7/28/19:  Domestic violence (other)** as defined in former RCW 10.99.020 was pled and proved for count(s) _____ .

(j) ☐ **Crime on or after 7/28/19:  Domestic violence – family or household member** as defined in RCW 26.50.010(6) and RCW 10.99.020 was pled and proved for count(s) _____ .

(k) ☐ **Current offenses encompassing the same criminal conduct** in this cause are count(s) _____ RCW 9.94A.589(1)(a).

(l) ☐ **Aggravating circumstances** as to count(s) _____ : _____

**2.2 OTHER CURRENT CONVICTION(S):** Other current convictions listed under different cause numbers used in calculating the offender score are (list offense and cause number): _____

**2.3 CRIMINAL HISTORY:** Prior convictions constituting criminal history for purposes of calculating the offender score are (RCW 9.94A.525):

☐ Criminal history is attached in **Appendix B.**

☐ One point added for offense(s) committed while under community placement for count(s) _____

**2.4 SENTENCING DATA:**

| Sentencing Data | Offender Score | Seriousness Level | Standard Range | Enhancement | Total Standard Range | Maximum Term |
|---|---|---|---|---|---|---|
| 1 & 2 | 9 | XII | 240-318 months, each | | 240-318 months, each | LIFE and/or $50,000 |
| 3 & 4 | 9 | X | 149-198 months, each | | 149-198 months, each | LIFE and/or $50,000 |

☐ Additional current offense sentencing data is attached in **Appendix C.**

**2.5 EXCEPTIONAL SENTENCE**

☐ Findings of Fact and Conclusions of Law as to sentence above the standard range:

    <u>Finding of Fact:</u>  The jury found or the defendant stipulated to aggravating circumstances as to Count(s) _____

    <u>Conclusion of Law:</u>  These aggravating circumstances constitute substantial and compelling reasons that justify a sentence above the standard range for Count(s) _____ . ☐ The court would impose the same sentence on the basis of any one of the aggravating circumstances.

☐ An exceptional sentence above the standard range is imposed pursuant to RCW 9.94A.535(2) (including free crimes or the stipulation of the defendant). Findings of Fact and Conclusions of Law are attached in Appendix D.

☐ An exceptional sentence below the standard range is imposed. Findings of Fact and Conclusions of Law are attached in Appendix D.

## III. JUDGMENT

*IT IS ADJUDGED* that defendant is guilty of the current offenses set forth in Section 2.1 above and **Appendix A.**

☒ The Court DISMISSES Count(s) __5-6__ .

## IV. ORDER

IT IS ORDERED that the defendant serve the determinate sentence and abide by the other terms set forth below.

[  ] This offense is a **felony firearm offense** (defined in RCW 9.41.010; includes any felony committed while armed with a firearm, unlawful possession of a firearm, theft of a firearm, and possession of a stolen firearm). **Registration is required** because this offense or an offense committed in conjunction with this offense: involved sexual motivation; was committed against a child under 18; or was a serious violent offense. As mandated by RCW 9.41.330(3), the Court requires that the defendant register as a firearm offender, in compliance with RCW 9.41.333. The registration requirements are explained in the attached **Appendix L.**

[  ] This offense is a **felony firearm offense** (defined in RCW 9.41.010; includes any felony committed while armed with a firearm, unlawful possession of a firearm, theft of a firearm, and possession of a stolen firearm) but does not fall within a category mandating registration. Having considered relevant factors, including criminal history, propensity for violence endangering persons, and any prior NGRI findings, the **Court orders that the defendant register** as a firearm offender, in compliance with RCW 9.41.333. The registration requirements are explained in the attached **Appendix L.**

4.1 **RESTITUTION, VICTIM ASSESSMENT, AND DNA FEE:**

    [☒] Defendant shall pay restitution to the Clerk of this Court as set forth in attached **Appendix E.**

    [ ] Defendant shall not pay restitution because the Court finds that extraordinary circumstances exist, and the court, pursuant to RCW 9.94A.753(5), sets forth those circumstances in attached Appendix E.

    [ ] Restitution to be determined at future restitution hearing on (Date) _____ at _____ ___m

        [ ] Date to be set.

        [ ] Defendant waives right to be present at future restitution hearing(s).

    [ ] Restitution is not ordered.

    **Defendant shall pay Victim Penalty Assessment** in the amount of $500 (RCW 7.68.035 - mandatory).

    [☒] **Defendant shall pay DNA collection fee** in the amount of **$100** (RCW 43.43.7541 – mandatory unless the state has previously collected DNA as a result of a prior conviction).

4.2 **OTHER FINANCIAL OBLIGATIONS:** Having considered the defendant's present and likely future financial resources, the Court concludes that the defendant has the present or likely future ability to pay the financial obligations imposed. Defendant shall pay the following to the Clerk of this Court:

    (a) [ ] $_____, Court costs (RCW 10.01.160), defendant is not indigent; [☒] Court costs are waived;

    (b) [ ] $_____, Recoupment for attorney's fees to King County Public Defense Programs (RCW 9.94A.030); [☒] Recoupment is waived;

    (c) [ ] $_____, Fine ; [ ] $1,000, Fine for VUCSA [ ] $2,000, Fine for subsequent VUCSA (RCW 69.50.430); [☒] VUCSA fine waived;

    (d) [ ] $_____, Other fine/assessment for: _____.

    [ ] Defendant has stipulated to his or her ability to pay legal financial obligations ordered.

4.3 **PAYMENT SCHEDULE:** The **TOTAL FINANCIAL OBLIGATION** set in this order is $ *600.00*
Restitution may be added in the future. The payments shall be made to the King County Superior Court Clerk according to the rules of the Clerk and the following terms: [ ] Not less than $_____ per month;
[☒] On a schedule established by the defendant's Community Corrections Officer or Department of Judicial Administration (DJA) Collections Officer. Restitution shall bear interest pursuant to RCW 10.82.090. **The Defendant shall remain under the Court's jurisdiction to assure payment of financial obligations: for crimes committed before 7/1/2000, for up to ten years from the date of sentence or release from total confinement, whichever is later; for crimes committed on or after 7/1/2000, until the obligation is completely satisfied.** Pursuant to RCW 9.94A.7602, if the defendant is more than 30 days past due in payments, a notice of payroll deduction may be issued without further notice to the offender. Pursuant to RCW 9.94A.760(7)(b), the defendant shall report as directed by DJA and provide financial information as requested.

Rev. 8/20/21

4.4 The defendant, having been convicted of a **FELONY SEX OFFENSE**, is sentenced to the following:

(a) **DETERMINATE SENTENCE :** Defendant is sentenced to a term of confinement in the custody of the
☐ **King County Jail** ☐ King County **Work/Education Release** (subject to conditions of conduct ordered this date) ☒ **Department of Corrections (DOC)**, as follows, commencing: ☒ Immediately;
☐ Date: _____ by _____ a.m. / p.m.                                    *error*

~~240~~ months/days on count _1_ ; ~~198~~ months/days on count _3_ ;  _____ months/days on count ____   *C.B*

~~240~~ months/days on count _2_ ;  _____ months/days on count _4_ ;  _____ months/days on count ____   *See*

☐ The defendant, who has been sentenced to confinement at DOC, was under the age of 18 when these crimes   *next*
were committed and is now under the age of 25, and shall be initially transferred to and placed in a facility
operated by the **Department of Children, Youth, and Families** pursuant to RCW 72.01.410.                      *page*

**ALTERNATIVE CONVERSION - RCW 9.94A.680 (LESS THAN ONE YEAR ONLY):**
_____ days of total confinement are hereby converted to:
   ☐ _____ days/ hours **community restitution** (for nonviolent offense) under the supervision of the
Department of Corrections to be completed: ☐ on a schedule established by the defendant's Community
Corrections Officer; or ☐ as follows: _____. If the defendant is not
supervised by the Department of Corrections, this will be monitored by the Helping Hands Program.
   ☐ Alternative **conversion was not used because:** ☐ Defendant's criminal history, ☐ Defendant's
failure to appear, ☐ Other:_____.

☐ **COMMUNITY CUSTODY for FAILURE TO REGISTER AS A SEX OFFENDER**
as to each of **Counts** _____ is ordered for ☐ 36 months ☐ ____ months (applicable
mandatory term reduced so that the total amount of incarceration and community custody does not exceed
the maximum term of sentence).
   **APPENDIX H, Community Custody conditions,** is attached and incorporated herein.

☐ **COMMUNITY CUSTODY (CONFINEMENT LESS THAN ONE YEAR)** as to each of Counts
_____, for **crimes committed on or after 7-1-2000**, is ordered for a period of 12 months.  The
defendant shall report to the Department of Corrections within 72 hours of this date or of his/her release if
now in custody; shall comply with all the rules, regulations and conditions of the Department for
supervision of offenders; shall comply with all affirmative acts required to monitor compliance; and shall
otherwise comply with terms set forth in this sentence. Sanctions and punishments for non-compliance will
be imposed by the Department of Corrections or the court.
   ☐ **APPENDIX _____ : Additional Conditions** are attached and incorporated herein.

☐ **COMMUNITY CUSTODY (CONFINEMENT OVER ONE YEAR)** as to each of Counts
_____, pursuant to RCW 9.94A.700, for **qualifying crimes committed before 6-6-1996** , is ordered
for 24 months or for the period of earned early release awarded pursuant to RCW 9.94A.728, whichever is
longer, up to 36 months. Sanctions and punishments for non-compliance will be imposed by the
Department of Corrections or the court.
   **APPENDIX H, Community Custody conditions,** is attached and incorporated herein.

☐ **COMMUNITY CUSTODY (CONFINEMENT OVER ONE YEAR)** as to each of Counts
_____, pursuant to RCW 9.94A.715 for **qualifying crimes (non RCW 9.94A.507 offenses)** is
ordered for ☐ 36 months ☐ _____ months (applicable mandatory term reduced so that the total amount
of incarceration and community custody does not exceed the maximum term of sentence). Sanctions and
punishments for non-compliance will be imposed by the Department of Corrections or the court.
   **APPENDIX H, Community Custody conditions,** is attached and incorporated herein.

(b) **INDETERMINATE SENTENCE – QUALIFYING SEX OFFENSES occurring after 9-1-2001:**
The Court having found that the defendant is subject to sentencing under RCW 9.94A.507, the defendant is sentenced to a term of total confinement in the custody of the **Department of Corrections** as follows, commencing: ☒ immediately; ☐ (Date): _____ by _____ ..m.

Count __1__ : Minimum Term: _240_ months/days; **Maximum Term:** _____ years/life;

Count __2__ : Minimum Term: _240_ months/days; **Maximum Term:** _____ years/life;

~~Count __3__ : Minimum Term: _198_ months/days; **Maximum Term:** _____ years/life;~~

Count __4__ : Minimum Term: _198_ months/days; **Maximum Term:** _____ years/life.

☐ The defendant was under the age of 18 when these crimes were committed and is now under the age of 25, and shall be initially transferred to and placed in a facility operated by the **Department of Children, Youth, and Families** pursuant to RCW 72.01.410.

☒ **COMMUNITY CUSTODY:** pursuant to RCW 9.94A.507 for each qualifying **SEX OFFENSE** committed on or after September 1, 2001, is ordered for any period of time the defendant is released from total confinement before the expiration of the maximum sentence as set forth above. Sanctions and punishments for non-compliance will be imposed by the Department of Corrections or by the court. **APPENDIX H: Community Custody conditions**, is attached and incorporated herein.

**4.5 ADDITIONAL CONDITIONS OF SENTENCE**

The above terms for counts _____1 – 4_____ are ☐ consecutive ☒ concurrent.

The above terms shall run ☐ consecutive ☒ concurrent to cause No.(s) _MJ 20 – 380_
_U.S. District Ct. – Western District_

The above terms shall run ☒ consecutive ☐ concurrent to any previously imposed sentence not referred to in this order.

☐ In addition to the above term(s) the court imposes the following mandatory terms of confinement for any special **WEAPON** finding(s) in section 2.1:_____
_____
which term(s) shall run <u>consecutive</u> with each other and with all base term(s) above and terms in any other cause. (For crimes committed after 6-10-1998.)

☐ The enhancement term(s) for any special **WEAPON** findings in section 2.1 is/are <u>included</u> within the term(s) imposed above. (For <u>crimes before 6-11-1998</u> only, per <u>In Re Charles</u>)

☐ In addition to the above term(s) the court imposes the following mandatory terms of confinement for any **SEXUAL MOTIVATION** finding(s) in section 2.1:_____
_____
which term(s) shall run <u>consecutive</u> with each other and with all base term(s) above.

The **TOTAL** of all terms imposed in this cause is _240_ months.

**Credit** is given for time served in King County Jail or EHD solely for confinement under this cause number pursuant to RCW 9.94A.505(6): ☐ _____ day(s) or ☒ days determined by the King County Jail.
☐ Jail term is satisfied and defendant shall be released under this cause.

Rev. 6/18/21                              5

4.6 **NO CONTACT:** For the maximum term of _____ ~~years~~, defendant shall have no contact, direct or indirect, in person, in writing, by telephone, or through third parties with: _____

**K.J. DOB 7/17/08**

☒ Any minors without supervision of a responsible adult who has knowledge of this conviction. *and then only with the permission of his CCO any treatment provider and the informed consent of the guardian of the minor*

4.7 **DNA TESTING:** The defendant shall have a biological sample collected for purposes of DNA identification analysis and the defendant shall fully cooperate in the testing, as ordered in **APPENDIX G.**

4.8 **SEX OFFENDER REGISTRATION:**
The defendant shall register as a sex offender as ordered in **APPENDIX J.**

**The defendant shall report to an assigned Community Corrections Officer within 72 hours of release from confinement for monitoring of the remaining terms of this sentence.**

Date: 4/18/22

JUDGE
Print Name:          MICHAEL R. SCOTT

Presented by:

Deputy Prosecuting Attorney, WSBA# 14523
Print Name: _____ Bohr

Approved as to form:

Attorney for Defendant, WSBA# 26797
Print Name: _____

IN THE SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-1-04874-3 SEA |
| | ) | |
| vs. | ) | APPENDIX E |
| | ) | |
| STUART MACGREGOR HOFFMAN, | ) | ORDER SETTING RESTITUTION |
| | ) | |
| Defendant, | ) | |

The court ordered payment of restitution as a condition of sentencing. The Court has determined that the following is entitled to restitution in the following amounts.

IT IS ORDERED that defendant make payments through the registry of the clerk of the court as follows:

Heather Johnson
c/o Superior Court Clerk's Office
516 3rd Avenue, 6th Floor                    AMOUNT:     $ 61.87
Seattle, WA 98104

DONE IN OPEN COURT this ___1st___ day of ___April___ 2022.

_____
JUDGE MICHAEL SCOTT

Presented by:                                   Copy received; Notice
                                                Presentation waived:

_____ 16223              _____ 26707
Deputy Prosecuting Attorney                   Brad A. Meryhew
                                              Attorney for Defendant

Order Setting Restitution
CCN# 11963810      REF# 033700648              M.H.

ORDER SETTING RESTITUTION - 1

Daniel T. Satterberg, Prosecuting Attorney
CRIMINAL DIVISION
W554 King County Courthouse
516 Third Avenue
Seattle, WA 98104-2385
(206) 477-3742  FAX (206) 205-6104

## SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-1-04874-3 SEA |
| | ) | |
| vs. | ) | APPENDIX G |
| | ) | ORDER FOR DNA TESTING |
| STUART MACGREGOR HOFFMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### DNA IDENTIFICATION (RCW 43.43.754)

The Court orders the defendant to cooperate with the King County Department of Adult Detention, King County Sheriff's Office, local police, and/or the State Department of Corrections in providing a biological sample for DNA identification analysis. The defendant, if out of custody, shall promptly contact the King County Sheriff's Office to make arrangements for the test to be conducted within 15 days. Refusal to provide a biological sample as required is a gross misdemeanor under RCW 43.43.754.

Date: 4/5/22

JUDGE, King County Superior Court

MICHAEL R. SCOTT

# SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| STATE OF WASHINGTON,<br>                Plaintiff,<br><br>       vs.<br><br>STUART MACGREGOR HOFFMAN,<br>                Defendant. | No. 20-1-04874-3 SEA<br><br>JUDGMENT AND SENTENCE<br>APPENDIX H - SEX OFFENSES<br>COMMUNITY CUSTODY |

## STANDARD CONDITIONS

The Defendant shall comply with the following conditions of community custody, effective as of the date of sentencing unless otherwise ordered by the court.

1. Report to and be available for contact with the assigned community corrections officer as directed;
2. Work at Department of Corrections-approved education, employment, and/or community restitution;
3. Not possess or consume controlled substances except pursuant to lawfully issued prescriptions;
4. Receive prior approval for living arrangements and residence location;
5. Not own, use, or possess a firearm or ammunition. (RCW 9.94A.706);
6. Notify community corrections officer of any change in address or employment;
7. Upon request of the Department of Correction, notify the Department of court-ordered treatment; and
8. Remain within geographic boundaries, as set forth in writing by the Department of Correction Officer or as set forth with SODA order.

## SPECIAL CONDITIONS - SEX OFFENSES      RCW 9.94A.703 & .704

Defendant shall:

1. Obey all municipal, county, state, tribal, and federal laws.
2. Indeterminate Sentences:  Abide by any Washington State Department of Corrections (DOC) conditions imposed (RCW 9.94A.704).
3. Have no direct or indirect contact with the victim(s) of this offense.
4. Within 30 days of release from confinement (or sentencing, if no confinement is ordered) obtain a sexual deviancy evaluation with a State certified therapist approved by your Community Corrections Officer (CCO) and follow all recommendations of the evaluator.  If sexual deviancy treatment is recommended, enter treatment and abide by all programming rules, regulations and requirements. Attend all treatment-related appointments (unless excused); follow all requirements, conditions, and instructions related to the recommended evaluation/counseling; sign all necessary releases of information; and enter and complete the recommended programming.
5. Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship.  Disclose sex offender status prior to any sexual contact.  Sexual contact in a relationship is prohibited until the treatment provider approves of such.
6. Obtain prior permission of the supervising CCO before changing work location.
7. If a resident at a specialized housing program, comply with all rules of that housing program.
8. Consent to DOC home visits to monitor compliance with supervision.  Home visits include access for the purposes of visual inspection of all areas of the residence in which the offender lives or has exclusive/joint control/access.
9. Do not  consume alcohol.
10. Be available for and submit to urinalysis and/or breathanalysis upon request of the CCO and/or chemical dependency treatment provider.
11. Submit to and be available for polygraph examination as directed to monitor compliance with conditions of supervision.
12. Register as a Sex Offender with the sheriffs office in every county where you reside, attend school, or work, as required by law.

**Appendix H - Sex Offenses, p. 2**

Additional **Crime-Related Prohibitions:** (the condition **must be related** to the crime being sentenced)

13. [ ] Abide by a curfew of 10pm-5am unless directed otherwise by the CCO or the court. Remain at your registered address or address previously approved by CCO during these hours.

14. [ ] Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.

**Offenses Involving Minors -**

15. [X] Have no direct or indirect contact with minors.

16. [X] Do not hold any position of authority or trust involving minors.

17. [X] Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or the CCO.

18. [X] Do not possess or access images depicting minors, whether real or simulated, engaging in sexually explicit conduct as defined by RCW 9.68A.011.

**Offenses Involving Alcohol/Controlled Substances -**

19. [ ] Do not purchase or possess alcohol.

20. [ ] Do not enter drug areas as defined by court or CCO.

21. [ ] Do not enter any bars/taverns/lounges or other places where alcohol is the primary source of business. This includes casinos and or any location which requires you to be over 21 years of age.

22. [ ] Obtain an [ ] alcohol [ ] chemical dependency evaluation and follow through with all recommendations of the evaluator. If chemical dependency treatment is recommended, enter treatment and abide by all program rules, regulations and requirements. Sign all necessary releases of information and complete the recommended programming.

**Offenses Involving Computers, Phones or Social Media -**

23. [ ] Do not use or access the World Wide Web, including email, except as specifically authorized by the supervising CCO through approved filters. The CCO is permitted to monitor the filters for compliance with this condition.

**Offenses Involving Mental Health Issues -**

24. [ ][ ] Obtain a mental health evaluation upon referral and follow through with all recommendations of the evaluator, including taking medication as prescribed. If mental health treatment is recommended, enter treatment and abide by all program rules, regulations and requirements. Sign all necessary releases of information and complete the recommended programming.

Other conditions may be imposed by the court or DOC during community custody.

Community Custody shall begin upon completion of the term(s) of confinement imposed herein, or at the time of sentencing if no term of confinement is ordered. The defendant shall remain under the supervision of the Department of Corrections and follow explicitly the instructions and conditions established by that agency. The Department may require the defendant to perform affirmative acts deemed appropriate to monitor compliance with the conditions and may issue warrants and/or detain defendants who violate a condition.

Date: 4/15/22

JUDGE

MICHAEL R. SCOTT

## SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Plaintiff,　)　No. 20-1-04874-3 SEA
　　　　　　　　　　　　　　　　　　)
　　　vs.　　　　　　　　　　　　　)　APPENDIX J
　　　　　　　　　　　　　　　　　　)　JUDGMENT AND SENTENCE
STUART MACGREGOR HOFFMAN,　　　　)　~~SEX KIDNAPPING OFFENDER NOTICE OF~~
　　　　　　　　　　　　　　　　　　)　REGISTRATION REQUIREMENTS
　　　　　　　　　　　　Defendant.　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)

**SEX AND KIDNAPPING OFFENDER REGISTRATION.** RCW 9A.44.128, RCW 9A.44.130, RCW 9A.44.140. You are required to register your complete residential address with the sheriff of the ~~county where you reside and provide other information specified in RCW 9A.44.130, because you have~~ been convicted of one of the following sex or kidnapping offenses: *Child Molestation 1, 2 or 3; Commercial Sexual Abuse of a Minor (formerly Patronizing a Juvenile Prostitute); Communication with a Minor for Immoral Purposes; Criminal Trespass against Children; Custodial Sexual Misconduct 1; Dealing in Depictions of a Minor Engaged in Sexually Explicit Conduct 1 or 2; Failure to Register as a Sex Offender; Incest 1 or 2; Indecent Liberties; Kidnapping 1 or 2 (if victim is a minor and offender is not the minor's parent); Possession of Depictions of a Minor Engaged in Sexually Explicit Conduct 1 or 2 ; Promoting Commercial Sexual Abuse of a Minor; Promoting Travel for Commercial Sexual Abuse of a Minor; Promoting Prostitution 1 or 2, if you have at least one prior Promoting Prostitution 1 or 2 conviction; Rape 1, 2, or 3; Rape of a Child 1, 2, or 3; Sending, Bringing Into State Depictions of a Minor Engaged in Sexually Explicit Conduct 1 or 2; Sexual Exploitation of a Minor; Sexual Misconduct With A Minor 1; (Human) Trafficking 1 under RCW 9A.40.100(1)(a)(i)(A)(III) or (IV) or (1)(a)(i)(B) (relating to sexually explicit acts or commercial sex acts); Unlawful Imprisonment (if victim is a minor and offender is not the minor's parent); Viewing Depictions of a Minor Engaged in Sexually Explicit Conduct 1 or 2; Voyeurism; any gross misdemeanor that is under RCW 9A.28, a criminal attempt, criminal solicitation, or criminal conspiracy to commit an offense that is classified as a sex offense under RCW 9.94A.030 or RCW 9A.44.128 or a kidnapping offense under 9A.44.128; or any felony with a finding of sexual motivation (RCW 9.94A.835 or RCW 13.40.135).* If you were found not guilty by reason of insanity as to one of the listed crimes and are committed to the custody of DSHS, you are required to register within 3 days of your release.

　　**If you are out of custody,** you must register within 3 business days of being sentenced.
　　**If you are in custody,** you must register within 3 business days from the time of your release. At the time of your release and at the time of any transfer to partial confinement you also are required to register with an official designated by the agency that has jurisdiction over you. You must register with the sheriff of the county where you reside within 3 business days of the end of partial confinement.
　　**If you change your residence within a county,** you must provide, by certified mail, with return receipt requested, or in person, signed written notice of your change of residence to the county sheriff within 3 business days of moving.
　　**If you change your residence to a new county within this state,** you must register with the sheriff of the county of your new residence within 3 business days of moving. In addition, within 3 business days of moving you must provide, by certified mail, with return receipt requested, or in person, signed written notice of your change of address to the sheriff of the county where you last registered.

APPENDIX J　Rev. 8/14/2017　　　　　　　　　　　10

**If you plan to attend or work at a public or private school or institution of higher education** in Washington, you are required to notify the sheriff of the county where you reside within 3 business days prior to arriving at the school to work or attend classes. You also must notify the sheriff after that attendance or work ends.

**If you lack a fixed residence,** you are required to register as homeless within 3 business days after ceasing to have a fixed residence. You must also report in person to the sheriff of the county where you registered on a weekly basis. You must keep an accurate accounting of where you stay during the week and provide it to the county sheriff upon request. If you are under DOC supervision and lack a fixed residence, you must register in the county where you are being supervised. If you enter a different county and stay there for more than 24 hours, you will be required to register in the new county within 3 business days.

**If you leave the state** following your sentencing or release from custody but later move back to Washington, you must register within 3 business days after returning to this state.

**If you move to a new state,** you must register with the new state within 3 business days after establishing residence. You must also send written notice, within 3 business days of moving to the new state, to the county sheriff with whom you last registered in Washington State.

**If you work, carry on a vocation or attend school in another state,** you must register with the new state within 3 business days after beginning work or school, or carrying on that vocation.

**If you are not a resident of Washington,** but attend school, are employed, or carry on a vocation in the State of Washington, you must register with the county sheriff for the county where your school, place of employment, or vocation is located. **If you visit** Washington and intend to be present for 10 days or more, within 3 business days of your arrival you must register with the county sheriff of each county where you will be staying.

**If you apply to change your name,** you must submit a copy of that application to the sheriff of the county where you reside and to the Washington State Patrol at least 5 days before the entry of the order granting the name change. You must submit a copy of any order changing your name to the sheriff of the county where you reside and to the Washington State Patrol within 3 business days of the entry of that order.

**If you intend to travel outside the United States,** you must provide, by certified mail, with return receipt requested, or in person, signed written notice of the details of your travel plan (purpose and means of travel, destination, itinerary details, passport number and country) to the sheriff of each county where you are registered, at least 21 days before you travel. If you cancel or postpone that travel, you must notify the sheriff(s) within 3 days of canceling or postponing, or on the departure date you provided in your notice, whichever is earlier. If you travel routinely across international borders for work, or must travel unexpectedly due to a family or work emergency, you must notify the sheriff(s) in person, at least 24 hours before you travel; you must explain to the sheriff(s) in writing why it is impracticable for you to comply with the notice required by RCW 9A.44.130(3).

The King County Sheriff's Office sex offender registration desk is located on the first floor of the King County Courthouse - 516 3rd Avenue, Seattle, WA.

**Failure to comply with registration requirements is a criminal offense.**

Copy Received:

Stuart Hoffman     4/15/22     _____

Defendant           Date    Judge

                                 MICHAEL R. SCOTT

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

STATE OF WASHINGTON,              )
                                  )
                    Plaintiff,    )   No. 20-1-04874-3 SEA
                                  )
          vs.                     )   NOTICE OF INELIGIBILITY TO
                                  )   POSSESS FIREARM AND
                                  )   LOSS OF RIGHT TO VOTE
STUART MACGREGOR HOFFMAN,         )
                                  )
                    Defendant.    )

Pursuant to RCW 9.41.047, **you are not permitted to possess a firearm** until your right to do so is restored by a court of record.  You are further notified that you must immediately surrender any concealed pistol license.

If you have been convicted of a felony and sentenced to a term of total confinement under the jurisdiction of the Department of Corrections (DOC), the following **VOTING RIGHTS NOTICE** (RCW 10.64.140) applies:

I acknowledge that my right to vote has been lost due to my felony conviction and sentence to a term of total confinement under the jurisdiction of DOC.  If I am registered to vote, my voter registration will be cancelled.  My right to vote will be automatically restored as long as I am not serving a sentence of total confinement (as defined by RCW 10.64.140) under the jurisdiction of DOC.  I must reregister before voting.  Voting before the right is restored is a class C felony under RCW 29A.84.660.

Date: _4/15/22_

_____
Judge, King County Superior Court

MICHAEL R. SCOTT

_Steuart Hoffman_
DEFENDANT

FIREARM AND VOTING RIGHTS NOTICE
Revised 12/7/21

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 20-1-04874-3 SEA |
| Plaintiff, | ) | |
| | ) | NOTICE OF RIGHTS ON APPEAL AND |
| vs. | ) | RIGHTS PURSUANT |
| | ) | TO RCW 10.73 |
| STUART MACGREGOR HOFFMAN, | ) | (NTRA) |
| | ) | |
| Defendant. | ) | |
| | ) | |

I have been advised:

1. That I have the right to appeal my conviction;

2. That I have the right to appeal my sentence if the sentence imposed is outside the standard range or under certain other circumstances;

3. That unless a notice of appeal is filed within thirty days after the entry of the judgment or order appealed from, the right to appeal is irrevocably waived;

4. That the Superior Court clerk will, if requested, supply a notice of appeal form and file it upon completion by me;

5. That I have the right, if I cannot afford it, to have counsel appointed and to have portions of the trial record necessary for review of assigned errors transcribed at public expense for an appeal;

6. That, pursuant to RCW 10.73.090, I have the right to collaterally attack my conviction within one year after the judgment becomes final;

7. That the time limits for collateral attack do not apply if there is newly discovered evidence if discovered with reasonable diligence, or if the statute is unconstitutional, or if the conviction was barred by the double jeopardy clauses, or if the evidence at trial was insufficient, or if there was a significant change in the law material to the conviction which applies retroactively, or if the sentence was outside the court's jurisdiction, pursuant to RCW 10.73.100.

| | |
|---|---|
| 4/15/22 | Stuart Hoffman |
| Date | Defendant |

I am fluent in the _____ language. I have translated this document for the defendant into that language. I certify, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct.

| | |
|---|---|
| _____ | _____ |
| Date and Place | Interpreter |

NOTICE OF RIGHTS ON APPEAL AND RIGHTS PURSUANT TO RCW 10.73  12

FINGER PRINTS



RIGHT HAND          DEFENDANT'S SIGNATURE: X Stuart Hoffman
FINGERPRINTS OF:    DEFENDANT'S ADDRESS: X CJAI/DOC
STUART MACGREGOR HOFFMAN

Dated: 4/15/22          ATTESTED BY: BARBARA MINER,
                             SUPERIOR COURT CLERK
                        By:
JUDGE                   DEPUTY CLERK
      MICHAEL R. SCOTT

CERTIFICATE                 OFFENDER IDENTIFICATION

I,
CLERK OF THIS COURT, CERTIFY THAT THE      S.I.D. NO.  WA29735465
ABOVE IS A TRUE COPY OF THE JUDGMENT AND
SENTENCE IN THIS ACTION ON RECORD IN MY    DOB: 05/25/1991
OFFICE.
DATED:
                            SEX:  Male

                            RACE:  White/Caucasian


                CLERK

By:
      DEPUTY CLERK