UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | CASE NO. 2:22-cr-00018-TL |
|---|---|
| Plaintiff, | |
| v. | AMENDED ORDER OF RESTITUTION |
| STUART MACGREGOR HOFFMAN, | |
| Defendant. | |

Before the Court is the issue of restitution that Defendant Stuart MacGregor Hoffman, who pled guilty to the Production of Child Pornography and Possession of Child Pornography, must pay to his identifiable victims who have requested it, pursuant to 18 U.S.C. § 2259. On June 15, 2022, the Court conducted a sentencing hearing for Mr. Hoffman but reserved ruling on the issue of restitution pending further briefing on the issue.

The Court has reviewed the Government's Post Judgment Statement Regarding Restitution ("Government's Statement") (Dkt. No. 35), the 2,485-page Exhibit A accompanying the Government's Statement (Dkt. No. 37), the Government's Supplemental Post Judgment

AMENDED ORDER OF
RESTITUTION - 1

Statement Regarding Restitution ("Government's Supplemental Statement") (Dkt. No. 42), the 297-page Exhibit A accompanying the Government's Supplemental Statement (Dkt. No. 44), the 126-page Exhibit B to the Government's Supplemental Sentencing Memorandum Regarding Restitution (Dkt. No. 49), Mr. Hoffman's Response to the Government's Request for Restitution (Dkt. No. 38), the Government's Second Supplemental Post-Judgment Statement Regarding Restitution (Dkt. No. 52),[1] and the remaining relevant record. In their briefing, the Parties agree that the Court can determine restitution on the written pleadings without further oral argument, and the Court agrees. *See* Dkt. No. 35 at 1; Dkt. No. 38 at 1. The Court hereby issues this Order regarding restitution.

### I.   BACKGROUND

On February 18, 2022, Mr. Hoffman pled guilty to one count of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e) ("Count One"), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4) and § 2252(b)(2) ("Count Two"). Dkt. No. 13. The production charge is unrelated to any of the victims who are seeking restitution. The Court entered a Judgment on June 15, 2022, sentencing Mr. Hoffman to 240 months of imprisonment for Count One and 180 months of imprisonment for Count Two, to run concurrently to each other as well as the previously imposed state court sentence and to be followed by a lifetime term of supervised release. Dkt. No. 33 at 2. The judgment deferred ordering restitution. *Id.* at 8.

---

[1] This Order has been amended to reflect an error in the number of victims—and therefore the total amount of restitution—who have requested restitution from Mr. Hoffman. *See* Dkt. No. 52 (Government statement acknowledging inadvertent error). Namely, the prior version of this Order listed the two sisters of "PinkHeartSisters" as separate victims, when it should have accounted for the two sisters as one victim in accordance with the Victim Identification Report provided to Mr. Hoffman. *See id.*

From the collection of child sexual abuse material obtained from Mr. Hoffman, the Child Identification Report prepared by the National Center for Missing and Exploited Children identified 283 victims in his child pornography collections. Dkt. No. 35 at 2. The Government requests restitution for 26 of the identified victims, in amounts ranging from $3,000 to $15,000 each, as follows:[2]

|     | Series/Victim | Request |
| --- | --- | --- |
| 1.  | 8 Kids: John Doe 1 | $3000–$15,000 |
| 2.  | 8 Kids: John Doe 2 | $3000–$15,000 |
| 3.  | 8 Kids: John Doe 3 | $3000–$15,000 |
| 4.  | 8 Kids: John Doe 4 | $3000–$15,000 |
| 5.  | 8 Kids: John Doe 5 | $3000–$15,000 |
| 6.  | At School | $10,000 |
| 7.  | Best Necklace | $5,000 |
| 8.  | BluePillow1 | $5,000 |
| 9.  | BluesPink1 | Court's discretion but no less than $3,000 |
| 10. | CinderblockBlue | Court's discretion but no less than $3,000 |
| 11. | Cindy | $8,000 |
| 12. | Jan_Socks1 | $10,000 |
| 13. | Jenny | Court's discretion but no less than $3,000 |
| 14. | Lighthouse1 | $10,000 |
| 15. | Marineland1 | $10,000 |
| 16. | Middle Model Sister | $3,000 |
| 17. | Misty | Court's discretion but no less than $3,000 |
| 18. | Motorcouch1 | $5,000 |
| 19. | PinkHeartSisters | Court's discretion but no less than $3,000 |
| 20. | Rap72 | $5,000 |
| 21. | RapJerseys | $5,000 |
| 22. | SpongeB | $3,000 |
| 23. | Sweet Pink Sugar | $5,000 |
| 24. | Sweet White Sugar | $5,000 |

---

[2] The Government originally requested restitution for eighteen of these individuals. *See* Dkt. No. 31 at 6. The Government's Statement requested restitution for 27 individuals. Dkt. No. 35 at 4. The Government's Statement added requests for 8 Kids Series, Middle Model Sister, SpongeB, and Tara. *Id.*; Dkt. No. 37 at 2–3. The Government later clarified that "PinkHeartSisters" should be counted as a single victim rather than two victims, as represented in the Government's Statement. Dkt. No. 52. Therefore, the total number of victims seeking restitution is 26.

| 25. | Tara  | $3,000  |
| --- | ----- | ------- |
| 26. | Vicky | $10,000 |

Dkt. No. 37 at 2–3.

Mr. Hoffman stipulates that: (1) the Government has proven each of these individuals is a victim within the meaning of the law; (2) the Government has established each of these individuals was harmed by his misconduct; (3) the Government has established each of these individuals incurred losses as a result of the harm that occurred due to his misconduct; and (4) the Government has established by a preponderance of the evidence the full amount of each victim's losses caused by him. Dkt. No. 38 at 1–2. Mr. Hoffman requests that the Court order the statutory minimum of $3,000 per victim. *Id.* at 2.

## II. LEGAL STANDARD

The crimes to which Mr. Hoffman pled guilty fall under Chapter 110 of Title 18 of the U.S. Code, which covers offenses involving the trafficking of child pornography. 18 U.S.C. § 2259. Trafficking in child pornography, for purposes of restitution, includes the receipt or possession of child pornography. 18 U.S.C § 2259(c)(3). For these offenses, restitution is mandatory, 18 U.S.C. § 2259(a), and a court may not decline to issue an order under this section due to the "economic circumstances of the defendant." 18 U.S.C. § 2259(b)(4).

For a court to award restitution under the statute, the government must first "prove by a preponderance of the evidence that [the defendant's] offenses proximately caused the losses incurred by" the victims. *United States v. Kennedy*, 643 F.3d 1251, 1263 (9th Cir. 2011). The Government then must prove the restitution amount by a preponderance of the evidence. 18 U.S.C. § 3664(e). The Government "must provide the court with enough evidence to allow the court to estimate the 'full amount of the victim's losses' with 'some reasonable certainty.'" *Kennedy*, 643 F.3d at 1261 (quoting *United States v. Doe*, 488 F.3d 1154, 1159–60 (9th Cir.

2007)). It may be impossible to trace the precise loss caused by the individual defendant under a "more traditional causal inquiry." *See Paroline v. United States*, 572 U.S. 434, 458 (2014). Nevertheless, it is "improper if the district court must 'engage in . . . arbitrary calculations' to determine the amount of the victim's losses." *Id.* (quoting *United States v. Laney*, 189 F.3d 954, 967 n.14 (9th Cir. 1999)).

In 2018, Congress amended the mandatory restitution statute. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 § 3, 132 Stat. at 4384. The statute, as amended, provides a three-step process for determining restitution in a case involving a defendant convicted of trafficking in child pornography, *see* 18 U.S.C. § 2259(c)(3):

> [Step One] **Determining the full amount of a victim's losses.**--The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim.
>
> [Step Two] **Determining a restitution amount.**--After completing the determination required [in Step One], the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.
>
> [Step Three] **Termination of payment.**--A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses. After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated. The court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

18 U.S.C. § 2259(b)(2). The Ninth Circuit has provided limited guidance on the process of determining the restitution portion of a victim's loss attributable to a defendant under 18 U.S.C. § 2259 since it was amended. Absent such guidance, the Court continues to rely on *Kennedy*,

*Paroline*, and other pre-2018 case law as guideposts (discussed below) to determine the restitution that Defendant is liable for here.

### III.   DISCUSSION

"The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating [the] tragedy." *Paroline*, 572 U.S. at 457. In this case, Mr. Hoffman admits to the possession of child pornography images of each of the victims who are requesting restitution, stipulates that the individuals are victims who were harmed by his conduct and incurred losses as a result, and requests that the Court order the statutory minimum of $3,000 per victim. Dkt. No. 38 at 1–2.

### A.   Step One: Determining the Full Amount of Each Victim's Losses

In determining the appropriate restitution for each victim to be paid by a defendant, a district court should first "determine the amount of the victim's losses caused by the continuing traffic in the victim's images." *Paroline*, 572 U.S. at 460; *see also* 18 U.S.C. § 2259(b)(2)(A). A victim's losses include "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, and in the case of trafficking in child pornography offenses, as a proximate result of all trafficking in child pornography offenses involving the same victim." 18 U.S.C. § 2259(c)(2). Examples of such losses are: (1) medical services relating to physical, psychiatric, or psychological care; (2) physical and occupational therapy or rehabilitation; (3) necessary transportation, temporary housing, and childcare expenses; (4) lost income; (5) reasonable attorneys' fees, as well as other costs incurred; and (6) any other relevant losses incurred by the victim. *Id.* Future counseling expenses are recoverable as part of restitution, even if none have yet been incurred. *United States v. Laney*, 189 F.3d 954, 966–67 (9th Cir. 1999).

The Government describes its process of determining the appropriate restitution amount to request as follows:

> Law enforcement first obtains a defendant's collection of child sexual abuse material. This collection is sent, as a routine part of a child-exploitation investigation, to the National Center for Missing and Exploited Children (NCMEC) in Alexandria, Virginia, which prepares a "Child Identification Report." The purpose of the report is to identify known victims and to discover unidentified ones . . . .
>
> All identified victims for whom the U.S. Attorney's Office (1) has contact information and that have (2) requested notification are alerted to their right to seek restitution. Notice is accomplished by a victim witness specialist in the Office using a second report, called a "Victim Information Report," created by the FBI based on the identified series in the NCMEC Child Identification Report. . . . The Department of Justice keeps copies of victim impact statements on file to relieve victims of the burden of repeated resubmission. As such, some of the letters written by the victims or their parents or guardians are dated.

Dkt. No. 35 at 2–3. The Government notes that not all victims choose to participate in the process, as restitution may be perceived as a "monetization of their suffering that ties them, intolerably, to the defendant" while, for others, receiving endless inquiries regarding restitution would defeat their desire to remain unaware of the extent of their victimization. *Id.* at 3. For those individuals who request restitution, the Victim Assistance Unit works with attorneys representing the victims to assess the incurred losses as a result of the harm caused by a specific defendant. *Id.* at 4.

The victim impact statements submitted in this case detail the long-term and ongoing effects of each victim's abuse and the continued viewing of his or her abuse by others. Where psychological evaluations were provided, they confirmed that the knowledge that the victims' images continue to circulate and be viewed on the internet continue to profoundly impact each victim's life. Life care or treatment plans also were provided for some of the victims, though they only account for the costs of physical or mental-health–related treatment a victim will need.

Some victims also provided information from economic or vocational experts demonstrating that the continued sharing and viewing of their abuse either has caused or is likely to cause a loss in income the individual can earn, with some victims providing a specific estimate of the loss.

Even though Mr. Hoffman stipulated that the Government has established by a preponderance of the evidence the full amount of each victim's losses caused by him (Dkt. No. 38 at 2), the Court has nonetheless carefully reviewed all the materials provided on each victim seeking restitution from Defendant, including the victim impact statements, life care plans, and estimates of occupational or economic loss for the victims. Given the sensitive and personal nature of the information, the Court will not detail the specific circumstances and harm suffered by each individual. But based on this review, the Court finds that the evidence submitted by the Government sets forth sufficient information for the Court to determine the total losses suffered to date by the 26 victims "as a result of the trafficking in child pornography depicting the victim." 18 U.S.C. § 2259(b)(2). The Court finds that the total loss for each victim is the amount listed by the Government for each individual in Exhibit A to the Government's Statement.[3] Dkt. No. 36 at 2–3.

Thus, having completed Step One of the Section 2259(b)(2) inquiry, *i.e.*, determining the full amount of each victim's losses, to the Court now proceeds to Step Two of the inquiry—determining the amount of restitution attributable to Mr. Hoffman.

---

[3] In light of the sensitivity of the information contained in the sealed document and the lack of dispute as to the amounts between the Parties, the Court does not list the specific amounts here. The total loss per victim ranges from approximately $43,000 to over $12 million per victim, with the exception of one victim who has not completed the forensic examination necessary to determine total losses but has at least shown that the cost for obtaining those reports, which is recoverable as restitution, would be approximately $20,500. *See* Dkt. No. 37 at 2–3, 1619–21.

**B.     Step Two: Determining Defendant's Restitution Amount**

Next, the Court must determine an amount of restitution "that reflects the defendant's relative role in the causal process that underlies the victim's losses." 18 U.S.C. § 2259(b)(2). The Court considers certain factors in assessing "the relative causal significance of the defendant's conduct in producing those losses." *Paroline*, 572 U.S. at 460. Those factors include: (1) the number of past criminal defendants found to have contributed to the victim's general losses; (2) reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; (3) any available and reasonably reliable estimate of the broader number of offenders involved; (4) whether the defendant reproduced or distributed images of the victim; (5) whether the defendant had any connection to the initial production of the images; (6) how many images of the victim the defendant possessed; and (7) other facts relevant to the defendant's relative causal role. *Id.* A court must also disaggregate any losses caused by "the original abuse of the victim" and losses caused by "the ongoing distribution and possession of images of that original abuse, to the extent possible." *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015). The calculation of restitution "cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Paroline*, 572 U.S. at 459; *see also United States v. Massa*, 647 F. App'x 718, 720 (9th Cir. Apr. 1, 2016) (it was not error to fail to "distinguish between losses caused by the ongoing traffic in the victims' images that happened before [the defendant] first accessed the images from the losses that happened after he first accessed the images").

Here, despite the copious information the Government has now provided in support of the Court's determination of the restitution that Mr. Hoffman must pay, the Court finds that it does not have the information required to determine "the relative causal significance of the defendant's conduct in producing [the total] losses" for each individual. *Paroline*, 572 U.S. at

460. The Court recognizes the daunting and difficult task the Government faces in furnishing the information that the law requires to prove restitution. The Court is also mindful that requiring updated information from victims may re-traumatize them as it could force them to be constantly reminded of what happened to them, and this Court's intent is not to put up hurdles to the collection of restitution for victims. Nevertheless, the Court must ensure that the law is followed and that the Government has satisfied its burden of proving the amounts requested for each victim.

The Court begins its analysis of the appropriate restitution amount starting with the last four *Paroline* factors. In this case, as it relates to the victims who have requested restitution, Mr. Hoffman was only charged with, and pled guilty to, the possession of pornography. There is no evidence before the Court that Mr. Hoffman reproduced or distributed images of any of the victims or had any connection to the initial production of the images. *Paroline*, 572 U.S. at 443. The Court was not provided with information regarding how many images of each victim Mr. Hoffman possessed. *Id.*

With regard to the first three *Paroline* factors, a handful of the victims provided information regarding the number of past criminal defendants found to have contributed to the victim's general losses. However, the Court does not find this *Paroline* factor particularly helpful in determining *this* defendant's relative causal role in each victim's losses without the corollary factors regarding the number of future offenders likely to be caught and convicted for crimes contributing to the victim's losses or any reasonably reliable estimate of the broader number of offenders involved. Of course, these latter two factors require the Government to speculate, a practice this Court does not encourage. *See United States v. Reynolds*, 2014 WL 4187936, at *6 (E.D. Mich. Aug. 22, 2014) ("The Government has not provided evidence regarding these factors, likely because it simply does not have such information. Frankly, these two suggested

factors strike this Court as incredibly speculative—this Court questions how you could ever have reasonable or reliable estimates of the above."), *aff'd*, 626 F. App'x 610 (6th Cir. 2015). Indeed, as the Court of Appeals for the District of Columbia has observed, "many courts have concluded that, as restitution factors, future convictions and total offenders are 'virtually unknown and unknowable.'" *United States v. Monzel*, 930 F.3d 470, 482 (D.C. Cir. 2019) (quoting *United States v. Crisostomi*, 31 F. Supp. 3d 361, 364 (D.R.I. 2014)) (collecting cases). Therefore, the Court places little weight on these three factors.

Counsel for one of the victims points out the problem with the current system for determining restitution for victims:[4]

> [A victim] is not aware of the number of individuals who might have possessed [the victim's] images who have not been apprehended. It is not possible for [the victim], nor anyone at this time, to know the broader number of people downloading [the victim's] images. Similarly, no one can possibly know or reasonably estimate the number of individuals who may in the future possess [the victim's] images. Further, there is no guarantee that such potential offenders would be caught and brought to justice. [The victim] is in no position to predict what that number might be.
>
> Ascertainment of such information would seem to be subject to decisions made within the Justice Department concerning the focus of its prosecutorial efforts. While any individual child pornography defendant may be found with the images of a large number of identified victims, and those victims may receive notices of their involvement in a particular criminal case, it remains within the sole discretion of the Government whether to include any particular image within the charge or charges it brings. Additionally, after charging, the Government may narrow the scope of a particular case even more by electing to proceed to trial or to accept a guilty plea to only one or two of a substantial number of images found to

---

[4] The Government moved to seal Exhibit A to the Government Statement which contains the materials supporting the restitution requests (Dkt. No. 36), and Mr. Hoffman did not object to the request (Dkt. No. 38 at 2). The Court granted the Government's motion to seal the materials. Dkt. No. 39. Given the amount of personal information contained in the materials, it would be unfeasible to require the Government to redact the materials. However, the Court believes that this particular passage from the materials is an exception as it simply states objective facts applicable to all the victims.

> be involved in the case. The victim whose images do not "survive" to the final count(s) of conviction has little or no possibility of obtaining an order of restitution against a particular defendant, let alone payment of restitution. The victim has no input whatsoever in the Government's decisions in this regard. Thus, a victim's images may be involved in many cases, though she may not become aware of that fact, and that fact may have nothing to do with whether she has the opportunity to receive any restitution orders.
>
> A number of courts have commented that these factors are simply unknowable, and that the *Paroline* opinion has provided no guidance in this area.

Dkt. No. 37 at 109–10. The final line sums up the conundrum the Court faces: the difficulty in practice of making a reasoned determination—based on factors that are often unascertainable—of what specific amount of loss suffered by a victim of child pornography is attributable to a defendant like Mr. Hoffman, who possessed (and presumably consumed) but did not produce or distribute the images at issue. The exercise of attempting to apply the remaining *Paroline* factors is not much more helpful; they only seem to force courts into the prohibited practice of "arbitrary calculations." *See Kennedy*, 643 F.3d at 1261.

      Finally, the Court notes that only a handful of victims disaggregated losses caused by "the original abuse of the victim" from losses caused by "the ongoing distribution and possession of images of that original abuse, to the extent possible" as required by the Ninth Circuit. *Galan*, 804 F.3d at 1291. However, this oversight for those who did not provide this information becomes irrelevant in light of all the other difficulties applying the "rough guidepost" factors.

      As the Ninth Circuit lamented in *Galan*, "this area, in which Congress has adopted a scheme that at least approaches the limits of fair adjudication despite attempts by the courts to avoid caprice, cries out for a congressional solution." 804 F.3d at 1291 (footnotes omitted). A modest silver lining is that, post-*Paroline*, Congress gave a slight helping hand to courts for this impossible task by amending the mandatory restitution statute to include a statutory minimum

amount of $3,000. 18 U.S.C. § 2259(b)(2)(B). But unfortunately, much uncertainty remains regarding the determination of restitution in these types of cases. Because the Court does not have sufficient information regarding the relative causal significance of Mr. Hoffman's conduct in producing the losses of his victims, the Court has no choice but to award only the statutory minimum for each victim.

### C. Step Three: Termination of Payment

After a victim has received restitution in the full amount of the victim's losses, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated. 18 U.S.C. § 2259(b)(2)(C). The Government provided information regarding the total amount recouped from all cases across the country by 25 of the victims at issue. *See* Dkt. No. 35 at 4; Dkt. No. 37 at 2. The information provided by the Government shows that the 25 victims have not yet recouped their total losses (or so much of their total losses such that the $3,000 restitution award would put any victim over his or her total loss amount).

With regard to the one individual for whom such information is missing, the victim's counsel represented that a forensic examination is still needed, and the victim has not yet received enough restitution to cover even the costs of the examination. Dkt. No. 37 at 1619–21. The costs alone will substantially exceed the statutory minimum amount of $3,000.

Accordingly, as the restitution ordered by the Court will not result in any victim having received the full amount of his or her total losses, the third and final step of the restitution inquiry is satisfied. *See* 18 U.S.C. § 2259(b)(2)(C).

//

//

//

//

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS Mr. Hoffman to pay each of the 26 victims who have submitted requests (and are listed in Section I of this Order) restitution in the amount of $3,000, for a total restitution amount of $78,000.

Dated this 2nd day of September 2022.

                                                 Tana Lin
                                               United States District Judge